UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

OCT 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ERNEST D. SMITH, PRO-SE
Fed. Reg. No. 11565-007
USP Lewisburg P.O. Box
1000 Lewisburg, PA 17837
                Plaintiff,

                v.

EDWARD F. REILLY, JR., Chairman
of the U.S. Parole Commission,

CRANSTON J. MITCHELL, Commissioner
of the U.S. Parole Commission,

DEBORAH A. SPAGNOLI, Commissioner
of the U.S. Parole Commission,

PATRICIA K. CUSHWA, Commissioner of
the U.S. Parole Commission, and

ISAAC FULWOOD, JR. Commissioner
of the U.S. Parole Commission

        United States Parole Commission
        5550 Friendship Blvd., Suite 420
        Chevy Chase, MD 20815-7286

                DEFENDANTS.

Case: 1:07-cv-01934
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 10/26/2007
Description: PRO SE GEN. CIVIL

## COMPLAINT

1. Plaintiff seeks to vindicate rights protected by the Ex Post Facto Clause of Article 1, Section 9 of the United States Constitution, the Fifth and Fourteenth Amendment to the United States Constitution, and federal law. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C., Section 1331 and 1343(a)(3), (a)(4), (b)(1), and 42 U.S.C. 1983.

2. The Court has authority to grant declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

3. This Court has jurisdiction to declare the rights of the parties and to grant further relief found necessary and proper.

**RECEIVED**

SEP 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## VENUE

4. Venue is appropriate in this Court pursuant to 28 U.S.C., Section 1391 (b).

## PARTIES

5. Plaintiff Ernest D. Smith is confined at USP Lewisburg, pursuant to a sentence imposed in October 1993, and December 1993, by the Superior Court of the District of Columbia.

6. Defendant Edward F. Reilly, Jr. is current Chairman of the Commission.

7. Defendant Isaac Fulwood, Jr. is a current Commissioner of the Commission.

8. Defendant Patricia K. Cusha is a current Commissioner of the Commission.

9. Defendant Cranston J. Mitchell is a current Commissioner of the Commission.

10. Defendant Deborah A. Spagnoli is a current Commissioner of the Commission.

11. Defendants, as the Chairman and/or Commissioner of the Commission were responsible for reviewing and acting upon plaintiff's request for parole in accordance with the United States Constitution and federal law and regulations.

## INTRODUCTION

12. On 10-8-93 and 12-3-93, plaintiff Ernest D. Smith was sentenced to an aggregate term of imprisonment, 19 to 57 years, for possession with intent to distribute cocaine, manslaughter/while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license.

13. At the time plaintiff Ernest D. Smith was convicted of these crimes and either pled guilty or was found guilty of these offenses, authority for parole decisions for D.C. Code violators was vested in the District of Columbia Parole Board (the "Parole Board").

14. Four years after plaintiff Ernest D. Smith's conviction, Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 (the "Revitalization Act"), Pub. L. No. 105-33, Section 11231, 11 Stat. 712 (1997).

15. The Revitalization Act abolished the Parole Board, see Pub. l. No. 105-33 Section 11231 (b), and directed the defendants as the Chairman and Commissioners of the Commission, to conduct parole hearings for District of Columbia prisoners "pursuant to the parole laws and regulations of the District of Columbia," id. Section 11231 (c).

16. On August 5, 1998, the defendants assumed the responsibility for making parole-release decisions for all eligible District of Columbia Code felons, pursuant to the Revitalization Act.

17. In 2000, despite the requirements of the Revitalization Act that the Defendants apply the parole statutes, regulations, and guidelines and practices of the Parole Board, the Defendants published new parole rules, regulations, and guidelines that they deemed applicable to any D.C. inmate receiving an Initial Parole Hearing after Agust 5, 1998 (the "2000 Guidelines"). See 28 CF.R. Section 2.80 (a)(5).

18. For inmates who had an initial parole hearing prior to August 5, 1998, the Defendant chose to apply the Parole Board Guidelines. See 28 C.F.R. Section 2.80 (a)(4). For all other inmates, some variation of the Defendants' 2000 Guideline applies. See id. Section 2.80 (a)(1) and (5).

19. The Commission determined under the statutes, regulations, guidelines, rules, policies, practices and customs of the Parole Board, that plaintiff became eligible for parole in January, 2008. Using the Comissions' 2000 Guidelines, the Defendants conducted plaintiff's initial parole hearing on July 23,2007.

20. Under the Parole Board's parole regulations, policies, and practices, plaintiff had served upto six months prior to the <u>minimum sentence</u>, which represents the period that an inmate needed to serve to satisfy the inmate's "accountability for the offense " itself.

21. The Defendants 2000 Guidelines, on the other hand, do not treat an inmates' "minimum sentence" as satisfying, offense accountability. Instead, the Defendants automatically add to parole eligibility a period of months that an inmate presumptively must serve before being considered suited for parole.

22. Futhermore, in explaining the basis for denying plaintiff's request for parole, the Defendant or their predecessors or designees have relied upon bases that are inconsistent with the Parole Board's regulations, guidelines, policies, and practices.

**Regulatory Framework for Parole
Decisions For D.C. Code Inmates at
the Time of Plaintiff's Conviction
and Sentencing**

23. At the time that Plaintiff committed the crimes for which he is currently incarcerated, the Parole Board administerd their parole

4

hearings and proceedings for D.C. Code violators in the custody of the District of Columbia.

24. Where D.C. Code offenders were in the custody of the United States Government, the Commission administerd their parole hearings, but in such circumstances. the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices which were found by this Court to have the force and effect of law.

25. Under the Parole Board's statutes. guidelines, rules, policies, practices, and customs, the "minimum sentence" for a crime, i.e., the period that an inmate must serve before he or she is eligible for parole, satisfied the inmate's accountability for the offenses of conviction.

26. In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as municipal regulations, that carefully prescribed the method and criteria that the Parole Board used to render decisions on parole requests. As its guide for determining whether an incarcerated individual would be paroled or re-paroled, the Board used the criteria set forth in the guidelines.

27. At the time plaintiff comitted the crimes for which he is currently incarcerated and at the time Plaintiff was sentenced, the Parole Board made parole decisions for D.C. Code offenders using guidelines that it formally adopted in 1985, and published in the District of Columbia Municipal Regulations in 1987 (the "1987 Guidelines").

28. In 1987 the Parole Board made parole decisions using mandatory guidelines it adopted in 1985 and published in the District of Columbia Municipal Regulations in 1987 (the "1987 Guidelines"). Futher, in 1991, to ensure consistent and equitable application of the 1987 Guidelines

and other parole regulations, the Parole Board adopted a Policy Guideline defining terms used in the 1987 Guidelines (the "1991 Guideline"). The 1991 policy Guideline applied to all request for parole heard by the Parole Board.

29. The 1987 Guideline required the Parole Board to calculate a Salient Factor Score ("SFS") for a prisoner. Based on a parole applicants SFS, the Parole Board then calculated a "total point score," using pre and post incarceration factors, on which it based its decision to grant or deny parole. In "unusual circumstances," when mitigating and/or countervailing factors applied, the Parole Board could depart from action indicated by an inmate's total point score.

30. In the case of an initial parole hearing, the 1987 Guidelines state that:

> After determining an adult parole candidate's SFS score and after applying the pre and post incarceration factors to arrive at a total point score pursuant to Section 204 and appendix 2-1, the Board shall take one (1) of the following actions:
>
> (a) IF POINTS=0: Parole shall be granted at initial hearing with low level of supervision required;
>
> (b) IF POINTS=1: Parole shall be granted at initial hearing with high level of supervision required;
>
> (c) IF POINTS=2: Parole shall be granted at initial hearing with highest level of supervision required;or
>
> (d) IF POINTS=3-5:Parole shall be denied at initial hearing and rehearing scheduled.

6

31. In the case of a parole rehearing, the 1987 Guidelines state that:

> In determining whether, to release on parole an adult or a youth offender appearing before the Board at a parole rehearing, the Board shall take the total point score according to the institutional record of the candidate since the last rehearing pursuant to Appendix 2-2. The Board shall take one (1) of the following actions:
>
> (a) IF POINTS=0-3: Parole shall be granted at this rehearing with highest level of supervision required; or
>
> (b) IF POINTS=4-5: Parole shall be denied and a rehearing date scheduled.

32. The Parole Board is directed by the 1987 Guidelines to grant parole to an adult offender at a parole rehearing if the final adjusted score is less than four, except in "unusual circumstances".

33. The manner in which the "institutional record of the candidate" is used to adjust the total point score from the initial hearing, as required by 28 D.C.M.R. Section 204.21, is also subject to precise guidelines adopted by the Parole Board. The adjustment is done via "point grid" in Appendices 2-1 and 2-2 of Title 28 of the District of Columbia Municipal Regulations. Appendix 2-1 is used to calculate an inmate's SFS and total point at the initial hearing, and Appendix 2-2 is used to calculate an inmate's SFS and total point at a parole rehearing.

34. Pursuant to Appendices 2-1 and 2-2 of the Parole Board Guidelines, in parole hearings, one point can be added to an inmates total score "negative institutional behavior". <u>Note</u>; Under 28 DCMR a Disciplinary Report cannot be used adversly against an inmate when that Report is beyond three (3) years old.

7

35. Pursuant to Appendices 2-1 and 2-2, in parole hearings, one point can be subtracted from an inmate's total point score for "program achievement" and two (2) points subtracted for "superior program achievement" (referred to in the 1991 Policy Guideline as "Superior Program or work assignment achievement"). Superior program achievement means program achievement that is beyond the level expected that the prisoner might achieve ordinarily. The Commission in its discretion may, grant more than a two (2) point deduction in the most clearly exceptional cases.

36. Section VI (A)(2)(b) of the 1991 Policy Guideline defines "sustained program or work assignment achievement" for purposes of Appendix 2-1 as:

> In Initial Parole Consideration cases, the following accomplishments shall ordinarily be considerd as sustained program or work assignment achievement during the period of incarceration.
>
> (1) Successful completion of one or two educational programs or vocational programs, or program levels, each of which enabled the offender to develop an academic or job-related skill, or enabled the offender to progress to a higher level of difficulty or skill in the program area.

37. Section VI (A)(2)(b) of the 1991 Policy Guideline defines "sustained program or work assignment" for the purposes of Appendix 2-2: "In Parole Reconsideration cases, the accomplishments set forth in Section VI-A-2(a) of this policy shall ordinarily be considerd as sustained program or work assignment achievement where completion occurred since the preceding consideration for release on the sentence".

38. The "negative institutional behavior" and "program achievement factors correspond to two findings required by Appendices 2-1 and 2-2: "Has this offender committed serious infractions (adjudication under Department of corrections due process procedure)?" and "Has this offender demonstrated sustained achievement in the area of prison programs, industries

or work assignments during this period of incarceration?"

39. As noted above, the Parole Board may depart from the results dictated by Sections 204.19 and 204.21 only in "unusual circumstances", and when particular procedures are followed: Any parole release decision falling outside the numerically determined guideline should b e explained by reference to specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-2. Section 204.22 of the District of Columbia Municipal Regulations provide that:

> The Board may, "in unusual circumstances, waive SFS and pre and post incarceration factors[which comprise the total point score] set forth in this chapter to grant or deny parole to candidate. In that case, the Board shall specify in writing those factors, which it used to depart from the strict application of the provisions of this chapter.

40. In the 1991 Policy Guideline, the Parole Board further defined the scope of its authority to deny parole unusual circumstances when a point score indicates that parole should be granted. Section VI (C') of the 1991 Policy Guideline, titled "Factors Countervailing A Recommendation To Grant Parole", lists and defines the following to constitute "unusual circumstances" countervailing a grant of parole:

> a. Repeated failure under parole supervision;
> b. Ongoing criminal behavior;
> c. Lengthy hisory of criminally related alcohol abuse;
> d. History of repetitive sophisticated criminal behavior;
> e. Unusually extensive or serious prior record;
> f. Instant offense involved unusual cruelty to victims, which applied where the offense involved physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense or especially vunerable victims such as children or elderly person; and,
> g. Repeated or extremely serious negative institutional behavior.

### The Parole Regulations Used At
### Plaintiff's Parole Hearing

41. As noted above, the Revitalization Act abolished the Parole Board and directed the Comission to conduct parole hearings for District of Columbia offenders according to the parole laws, customs and regulations of the District of Columbia.

42. After the Commission assumed responsibility for parole hearings for D.C. Code offenders, the Commission adopted the 2000 Guidelines and determined that these guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

43. Unlike the Parole Board Guidelines, practices, policies, and customs, the Commission's 2000 Guidelines and parole eligibility criteria do not consider the completion of a prisoner's "minimum sentence" as satisfying accountability. Instead, the Commission and its designees have repeatedly denied D.C. inmate's request for parole, including those of plaintiff, on the ground that they believe plaintiff has not served enough time for his offense, i.e., that the inmates have not been incarcerated long enough to satisfy the accountability for their offenses.

44. To account for the nature and circumstances of parole applicant's offenses, and the history and characteristics of the prisoners, the 2000 Guidelines contain certain instructions for the rating of certain offenses. Chapter 1 through 12, Section 2.20 of the Commission's Rules and Procedure comprise the Commission's Offense Severity Index.

45. Like the 1987 Guideline, the 2000 Guideline require the Commission to determine a Salient Factor Score ("SFS") for each parole applicant, which is based upon factors such as prior convictions/adjudications, prior commitments of more than 30 days, age at current offense/prior

commitments, recent commitment free period, probation/parole/confinement
/escape status at the time of the current offense, and the age of the
offender. The Commission Guidelines also state that "the Commission may
take into account any substantial information available to it in
establishing the prisoner's offense severity rating, salient factor score,
and any aggravating or mitigating circumstances, provided the prisoner
is apprised of the information and afforded an opportunity to respond.
"Under the Commission Guidelines, the SFS becomes part of a Base Point
Score ("EPS") which is comprised of three categories in which point are
assigned according to the following factors:

> Category I- Risk of Recidivism (Based on the
>             Salient Factor Score)
>
> Category II- Current or prior violence
>
> Category III- Death of victim or high level
>               of violence

(Although the Parole Board guidelines also require the formulation of
an SFS for parole applicants, the Parole Board used the SFS only to
determine the risk of recidivism on the part of the parole applicant.
The Parole Board did not use the SFS as the basis for an increase in
the period of imprisonment the inmate had to serve to demonstrate parole
suitability).

46. The Commission's method of parole eligibility determination
is to apply the BPS (the combined points assigned from Category I-III)
to the appropriate category of offense behavior, then to add the corresponding
number of months to a parole applicants minimum term/sentence (the number
of months an inmate must serve before becoming eligible for parole),
based on the offense severity index. The months added to the parole
applicants minimum sentence based on the BPS are considered by the Comm-
ission and its designees as the additional time of imprisonment the inmate

must serve above the months required for parole eligibility to be qualified for parole.

47. Pursuant to Section 2.80 (e)(1) of the Commission's Guidelines, the Commission "shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense. "Under this structure, the Commission has the sole discretion of determining whether the parole applicant's work and program achievements are to be considered "ordinary" or "superior". Per the Commission's Guidelines, "if superior program achievement is found, the award for superior program achievement shall be one third of the number of months during which the prisoner demonstrated superior program achievement". The Parole Board Guidelines, however, use an objective standard to reward "Sustained Program Achievement or Work Assignment Achievement" and an award is granted for what the Commission might consider "ordinary" achievement.

48. The "Total Guideline Range" (the ultimate determination of time served to establish presumptive suitability for parole pursuant to the Commission's guideline range, the number of months required by the prisoner's parole eligibility date, and the minimum of the guideline range for disciplinary infractions, if applicable. Then subtract the award for superior program achievement, if applicable.

49. Pursuant to section 2.80 (a)(4) of the Commission's Guidelines regarding D.C. Code offenders, the Commission's Guidelines apply to "all prisoners who are given initial parole hearings on or after August 5, 1998. For prisoners whose initial hearings were held prior to August 5, 1998, the Commission shall render its decisions by reference the guidelines applied by the D.C. Board of Parole". Thus, regardless of

the guidelines, rules, practices and customs in effect when and offender committed his or her crime and was sentenced, the offender's fitness for parole may hinge arbitrarily upon the date of his or her initial parole hearing.

## Plaintiff's Parole Hearing and
## Defendant's Use of the 2000 Guidelines

50. When plaintiff became eligible for parole in January 2008, and had his initial parole hearing July 23, 2007, Defendants or their predecessors assigned a hearing examiner, Joseph Polaski, to conduct plaintiff's initial parole hearing.

51. Despite the fact that plaintiff had been convicted and sentnced at the time the Parole Board applied it's 1987 Guidelines and other policies and practices to parole determinations Defendants and their predecessors instructed Hearing Examiner Polaski to use the Defendant's 2000 Guidelines in evaluating plaintiff's request for parole.

52. Under the 2000 Guidelines, plaintiff Salient Factor Score was Four (4) and his Base Point Score was Eight (8). Plaintiff's Base Point Score under the Federal 2000 Guidelines increased the time of incarceration plaintiff was expected to serve from the minimum term (Accountability for crimes under the "1987 Guidelines") to an additional 72-96 months indicating plaintiff should serve between 249-283 months.

53. Under Parole Board's parole statues, regulations guidelines, policies and practices, plaintiff would have to serve the minimum required sentence for his offenses when he became eligible for parole. Under the Parole Boards statues, regulations guidelines, policies and practices the minimum sentence represented the period that an inmate needed to serve to satisfy the inmates accountability for the offense itself.

54. Additionally, at Plaintiff's initial parole hearing Defendants used the Rescission Guidelines in section 2.63 of the Commission's guidelines to increases plaintiff's total range by 0-10 months for five non-drug related infractions that were more than three (3) years old, the Parole Board Guidelines would not have considered any of these disciplinary infractions. Instead, under the 1987 Guidelines only disciplinary infractions committed with in the 12 months preceeding the hearing or during the last half of the minimum sentence up to a period of 3 years are considered, unless infraction is for murder, manslaughter, kidnapping, armed robbery, or first-degree burglary.

55. At his initial parole hearing, the hearing examiner awarded plaintiff Superior Programing for completing the CODE Program, Chess Video, Information Employment, Intrduction to Business Law, Real Estate, Mortgage Transactions, Health Fitness, African American Studies, Industrial Housekeeping, Intrduction to Business, Accounting Principles, Health Awareness, Fitness Assessment, Creative Decorating, Cage Your Rage, Introduction to Spanish, Total Body Fitness, Business Entrepreneurship, Mentoring, Vocational Electrical Wiring, Vocational Training in Plumbing and the Challenge Program. Which took place over a Five year period continuously. In Defendants Guidelines 28 C.F.R. 2.80 §K, if Superior Program Achievement shall be one-third of the number of months during which inmate demonstrated Superior Programing, however Plaintiff recieved only (12 months).

56. Although Plaintiff's minimum sentence (the period of incarceration Plaintiff had to serve to become eligible for parole) under the Parole Board statues regulations, guidelines, policies and practices was 189 months, after Defendants increased the "minimum sentence" by the Base Point Score Guideline Range and Disciplinary Guideline Range and reduced

it by a 12-month period based on Plaintiff's Superior Program Achievement. Plaintiff's total guideline range was 249-283 months.

57. Beacuse Plaintiff was still 69 months away from the bottom of this Total Guideline Range, the hearing examiner determined that there was no reason to go outside the guidelines. As a result, Defendant's denied Plaintiff's Parole application and gave him a five year set off, setting his parole rehearing for July 2012. Defendants Notice of Action explained that their decision to deny Plaintiff's initial parole application was based on the fact that "A decision outside the Total Guideline Range at this consideration is not found warranted".

### Plaintiff's Rights Under the Parole Board's 1987 Guidelines

58. Under the Parole Boards statues, regulations, guidelines, policies, and practices Plaintiff would have satisfied offense accountability after serving his minimum sentence of 189 months, which would be January 2008.

59. As noted above the D.C. Parole Board's guidelines do not provide for increasing an offenders minimum sentence by considering formulaic offense accountability guidelines.

60. Had Defendant's applied the Parole Board's 1987 Guidelines to plaintiff's parole review plaintiff would have been subject to a rehearing date of 18-24 months only, based on total base score, unless unusual circumstances were found. No unusual circumstances were sited in the Notice of Action and a "decision outside the Total Guideline Range at this consideration is not found warranted" was the reason given for rehearing date.

61. Had Defendant's properly applied Parole Board's 1987 Guidelines, only disciplinary infractions committed within 12 months prior to parole hearing or within the last half of minimum sentence up to three years prior to initial parole hearing (unless the infraction is for an offense such as murder, manslaughter, kidnapping, armed robbery or first-degree burglary) are used to determine parole eligibility.

62. Had Defenadnt's applied the Parole Board's 1987 Guidelines, Plaintiff's total point score would have reduced by two (2) points for his Superior Programing awarded by hearing examiner.

63. Defendant's application of the 2000 Guidelines, rather than the D.C. Parole Board's 1987 and 1991 Policy Guidelines under which an offenders minimum sentence satisfies offense accountability and under which disciplinary reports occurring more than three years prior to parole hearing are not considered, has significantly increased the risk that Plaintiff will serve a longer period of incarceration than he would have had Defendant applied the Parole Board Guidelines that were in effect when he was convicted and sentenced. As a result, Defendant's have violated Ex Post Facto Clause of the United States Constitution.

**Count 1:**     **The defendant's violated the Ex Post Facto Clause of the United States Constitution**

64. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. The retroactive application of a new law, resulting in a significant risk of prolonging an inmate's sentence, than what would have resulted under the guidelines in effect when the inmate was convicted constitutes a violation of the Ex Post Facto Clause of the United States Constitution.

66. Prisoners are entitled to know the range of punishments available at the time of sentencing, and during the adjudication of their cases. The Ex Post Facto Clause assures that individuals are given fair warning of what actions will be punished and the degree to which they will be punished.

67. Under the 2000 Guidelines the Defendant's, their predecessors and/or their designees have significantly increased the risk that Plaintiff period of incarceration will be prolonged and he will serve longer than he would have had the Parole Board's Guidelines policies, and practices been applied. Specifically, Defendant's have significantly increased the risk that PLaintiff will serve a longer period of incarceration than he would have had the Parole Board's statues, regulations, guidelines policies and practices been applied correctly by:

    A. Increasing the period the Parole Board considered as satisfying offense accountability i.e., Plaintiff's parole eligibility date;

    B. Failing to give Plaintiff credit for program achievements to the Parole Board's Guidelines; and

    C. IncreasingPlaintiff's guideline range by considering disciplinary infractions that the Parole Board would have ignored

68. By ignoring the Parole Board's statues, regulations, guidelines, policies and practices, which consider the Plaintiff's minimum sentence as satisfying offense accountability, the Defendant's have neccessarily significantly increased the risk that the Plaintiff will be incarcerated longer than he would have had the Parole Board's statues , regulations, guidelines, policies and practices been applied.

Count 2:        Violation of Plaintiff's Fifth Amendment and
                Fourteenth Amendment Due Process Rights

                The Commission's Denial of Plaintiff's Program
                Achievement and Work Achievement Violated His
                Due Process Rights

69. Plaintiff repeats and re-alleges the allegations set forth
in paragraph 1 through 68 as if fully set forth herein.

70. Plaintiff has a constitutionally protected interest in receiving
credit for his program and work achievement as provided for under the
1987 Guidelines, the 1991 Ploicy and the Commission's own 2000 Guidelines.
Defendant's failed to award Plaintiff one-third of the months credit
for the time he was considered to have Superior Programing.

71. Futher, Defendant's continue to apply improper self-imposed
standards, rather than the guidelines established by the Parole Board,
which held authority over Plaintiff who was a D.C. Code offender at
the time of his covictions and sentencing.

72. As a result, Defendant's denied Plaintiff his constitutional
rights to a fair review process.

## Relief Requested

Wherefore, Plaintiff Ernest D. Smith respectfully requests that
this Court:

1. require the Defendants to apply the Parole Board's guidelines,
practices, and procedures, including, but not limited to the 1987 Guidelines
and the 1991 Policy Guidelines to plaintiff Ernest D. Smith

2. deem that plaintiff's service of his sentence to his parole
eligibility date satisfies the offense accountability for parole consider-
ation purposes;

3. order the Defendants to reconsider the decision rendered on Plaintiff's applications forparole based on the existing record in a manner consistent with the D.C. Parole Board's 1987 Guidelines, 1991 Policy Guideline, and policies, federal regulations, the Constitution, and all other requirements of law;

4. award plaintiff the expense of litigation; and

5. grant such other and futher relief as the Court deems appropriate.



Respectfully submitted,

Dated: _9-05-07_

*Ernest Smith*
Ernest D. Smith, pro-se
#11565-007
U.S.P.Lewisburg
P.O.Box 1000
Lewisburg, PA 17837

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Ernest D. Smith

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se (PO)

## DEFENDANTS

Edward F. Reilly, Jr. et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE T

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# 11565.007

Case: 1:07-cv-01934
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 10/26/2007
Description: PRO SE GEN. CIVIL

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☒ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ☐ **G. Habeas Corpus/ 2255** | ☐ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☐ **M. Contract** | ☐ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** ○    Check YES only if demanded in complaint    **JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES  ☒ NO    If yes, please complete related case form.

**DATE** 10/26/07    **SIGNATURE OF ATTORNEY OF RECORD** NCD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd