## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                            )
**ERNEST D. SMITH,**                        )
                                            )
         **Plaintiff,**                     )
                                            )
**v.**                                      )          **Civil Action No.  07-1934 (RMC)**
                                            )
**EDWARD F. REILLY, JR., Chairman,**        )
**United States Parole Commission,** *et al.*, )
                                            )
         **Defendants.**                    )
                                            )
———————————————————————

### MEMORANDUM OPINION

        This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment

on Ex Post Facto Claims and on Defendants' Cross-Motion for Summary Judgment.[1]  For the

reasons discussed below, the Court will grant partial summary judgment for Plaintiff.

## I.  BACKGROUND

### A.  Plaintiff's Criminal History

        On February 22, 1989, Plaintiff, then a juvenile, committed assault with a dangerous

weapon, and on June 7, 1990 the Superior Court of the District of Columbia ("Superior Court")

imposed a one-year term of probation.  *See* Mem. of P. & A. in Supp. of Defs.' Cross-Mot. for

Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Mot."), Ex. B (Presentence Report, Docket

No. M-4582-90) at 2 & Ex. H (D.C. Initial Prehearing Assessment) at 1.

---

[1]        Plaintiff seeks summary judgment only as to Count 1 of his Complaint, that is, the
ex post facto claim.  On these cross-motions, the parties do not address Count 2, in which Plaintiff
alleges that he "has a constitutionally protected interest in receiving credit for his program and work
achievement as provided for under the 1987 [Regulations], the 1991 [Policy Guideline] and the
Commission's own 2000 Guidelines."  Compl. ¶ 70.  The Court invites the parties to file either a
dispositive  motion or a report to the Court with a proposal as to how to proceed with respect to
Count 2.

On January 16, 1990, Plaintiff attempted the distribution of cocaine. Defs.' Mot., Ex. A (Sentencing Monitoring Computation Data) at 1. He entered a guilty plea, and on May 23, 1990, the Superior Court sentenced Plaintiff to five to 15 years' imprisonment, suspended execution of the sentence except for a 120-day term of work release, and imposed a two-year term of probation. *Id.*, Ex. A at 1 & Ex. D (Judgment and Commitment/Probation Order, Crim. No. F-610-90). On October 8, 1993, the Superior Court revoked probation and imposed a sentence of four to 12 years' imprisonment to be served consecutively to any other sentence. *Id.*, Ex. C (Judgment and Commitment Order, F-610-90).

On April 21, 1990, Plaintiff carried a pistol without a license, a misdemeanor, and on September 19, 1990, the Superior Court imposed a term of 120 days' incarceration. *Id.*, Ex. B at 3 & Ex. H at 2.

Plaintiff's current incarceration came about upon the revocation of probation on the drug offense, Crim. No. F-610-90, and upon his conviction and sentence for three offenses he committed on March 19, 1992. Defs.' Mot., Ex. A at 1-2. A jury found Plaintiff guilty, *id.*, Ex. E (Judgment and Commitment Order, Crim. No. F-4505-92), and on December 3, 1993, the Superior Court sentenced Plaintiff to a term of 10 to 30 years' imprisonment for manslaughter while armed (Count E), five to 15 years' imprisonment for possession of a firearm during a crime of violence (Count D), and three to nine years for carrying a pistol without a license (Count C). *Id.*, Ex. A at 2 & Ex. E. Plaintiff was to serve the sentences imposed for possession of a firearm during a crime of violence and for carrying a pistol without a license concurrently to each other, and he was to serve the sentence imposed for manslaughter while armed consecutively to the other sentences. *Id.*, Ex. E.

On August 18, 1994, the Superior Court sentenced Plaintiff to a term of 40 months to 10 years' imprisonment for carrying a pistol without a license on April 26, 1992. *Id.*, Ex. A at 3 & Ex. F (Judgment and Commitment Order, Crim. No. F-4503-92). Plaintiff was to serve this sentence concurrently to any other sentence. *Id.*, Ex. F.

Plaintiff's "aggregate term of imprisonment is 19 to 57 years," Compl. ¶ 12, and he became eligible for parole on January 25, 2008. *Id.* ¶ 50; Defs.' Mot., Ex. A at 4.

### B. The District of Columbia Board of Parole

#### 1. Indeterminate Sentencing and Parole Eligibility

Generally, the Superior Court sentenced an offender "for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced <u>may be released on parole . . . at any time after having served the minimum sentence</u>." D.C. Code § 24-403(a) (2001) (emphasis added). An offender was sentenced to a range, such as 10 to 30 years' imprisonment, and his parole eligibility was "established by the sentencing court." *Cosgrove v. Thornburgh*, 703 F. Supp. 995, 997 (D.D.C. 1988). Under District of Columbia law, parole may be granted when it appears that "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be." D.C. Code § 24-404(a) (2001).

#### 2. 1987 Regulations

There once existed a "Board of Parole . . . for the penal and correctional institutions of the District of Columbia," D.C. Code § 24-401.01(a) (2001), which determined an offender's

suitability for parole. *See Cosgrove*, 703 F. Supp. at 997.  The Board was authorized to:

> (1)     Determine if and when it is in the best interest of society and the offender to release him . . . on parole . . .;
> (2)     Determine the terms and conditions of parole. . .;
> (3)     Supervise parolees in the community; and
> (4)     Determine if and when to terminate parole . . . or  to modify the terms or conditions of parole . . . .

D.C. Code § 24-401.02(a) (2001).

In 1987, the Board promulgated regulations pertaining to its procedures for granting parole.  *See* 28 D.C.M.R. § 204 (1987) ("1987 Regulations").  The Board adopted "criteria consist[ing] of pre[-] and post-incarceration factors which enable[d] the Board to exercise its discretion when, and only when, release [was] not incompatible with the safety of the community." 28 D.C.M.R. § 204.1.  If the Board's decision fell "outside the numerically determined guideline," the decision must have been "explained by reference to specific aggravating or mitigating factors" set forth in Appendices 2-1 and 2-2.  *Id.*

First, the 1987 Regulations called for the calculation of a salient factor score ("SFS"), 28 D.C.M.R. § 204.2, which represented "an actuarial parole prognosis aid to assess the degree of risk posed by a parolee."  28 D.C.M.R. § 204.3.  To calculate the SFS, the Board considered six pre-incarceration factors: (1) prior convictions and adjudications (Item A); (2) prior commitments of more than 30 days (Item B); (3) age at the commission of current offense (Item C); (4) recent commitment-free period (Item D); (5) the offender's status (e.g., as a parolee or probationer) at time of current offense (Item E); and (6) a history of heroin or opiate dependence (Item F).  28 D.C.M.R. §§ 204.4-204.16; *see id.*, app. 2-1 (Salient Factor Score).  "The SFS placed the candidate into one of four risk categories (10-9 = low risk, 8-6 = fair risk, 5-4 = moderate risk, or 3-0 = high risk) from

which the Board would determine a baseline number of points ('base point score') that provided 0 for low risk, 1 for fair risk, 2 for moderate risk, and 3 for high risk." *Sellmon v. Reilly*, 551 F. Supp. 2d. 66, 70 (D.D.C. 2008), *recons. denied*, 561 F. Supp. 2d 46 (D.D.C. 2008), *appeal docketed*, No. 08-5382 (D.C. Cir. Aug. 29, 2008); *see* 28 D.C.M.R. § 204 app. 2-1. "The Board would then take the base point score and adjust it using the remaining pre-incarceration factor and the two-post incarceration factors to arrive at the Point Assignment Grid Score ('total point score')." *Sellmon*, 551 F. Supp. 2d. at 70. The remaining pre-incarceration factor assessed the type of risk the offender posed. *Id.* If the offender's current offense or a past convictions involved a felony causing death or serious bodily injury, a felony in which the offender used a dangerous weapon, or a felony conviction for distribution or intent to distribute illegal drugs, the Board added one point to the offender's base point score. *See* 28 D.C.M.R. § 204 app. 2-1.

The post-incarceration factors were the offender's institutional adjustment and institutional program achievement. *Sellmon*, 551 F. Supp. 2d. at 70; *see* 28 D.C.M.R. § 204 app. 2-1. The Board could add one point to an offender's base point score if he committed serious disciplinary infractions, and could subtract one point from the offender's base point score to reflect sustained achievement in prison programs or work assignments. *See* 28 D.C.M.R. § 204 app. 2-1. These adjustments yielded the offender's total point score. *Id.*

If the offender's total point score were zero, one or two, the 1987 Regulations provided that "[p]arole shall be granted at the initial hearing" with an appropriate level of supervision. 28 D.C.M.R. § 204.19(a-c). If the offender's total point score were three, four or five, parole "shall be denied at initial hearing and rehearing scheduled." 28 D.C.M.R. § 204.19(d).

The 1987 Regulations authorized the "waive[r] [of] the SFS and the pre[-] and post-

incarceration factors . . . to grant or deny parole to a parole candidate" in "unusual circumstances." 28 D.C.M.R. § 204.22.  For example, if the offender had repeatedly failed under parole supervision, had a history of repetitive sophisticated criminal behavior, had an unusually extensive and serious prior record or displayed unusual cruelty to victims, the Board could deny parole.  28 D.C.M.R. § 204, app. 2-1.  If the offender's criminal record resulted exclusively from trivial offenses or if he had achieved exceptional achievement in educational or vocational programs while incarcerated, the Board could have deemed him a better risk than application of the Regulations would suggest.  *Id.*

In 1991, the Board "adopted a policy guideline ('1991 Policy Guideline') to define the terms used in the appendices" to the 1987 Regulations.  *Sellmon*, 551 F. Supp. 2d at 71.  The 1991 Policy Guideline defined "negative institutional behavior" to exclude consideration of an infraction (other than murder, manslaughter, kidnapping, armed robbery, or first degree burglary) occurring more than three years before the initial parole hearing.  *Id.*; *see* Pl.'s Mot., Ex. 12 (Policy Guideline) at 2 (page number designated by the Court).  The term "sustained program or work assignment achievement" meant the "successful completion of one or more educational or vocational programs, or program levels, each of which enabled the [offender] to develop an academic or job-related skill, OR enabled the offender to progress to a higher level of difficulty or skill in the program area."  *Sellmon*, 551 F. Supp. 2d at 71.

## C.  The United States Parole Commission

### 1.  The Revitalization Act

On August 5, 1997, the United States Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 712 (1997).  Among other things, the Revitalization Act abolished the District of

Columbia Board of Parole, *see* D.C. Code § 24-131(b), and authorized the United States Parole Commission ("USPC") to grant, deny, impose or modify conditions of, and revoke parole for District of Columbia Code felony offenders, as well as to promulgate and apply its own regulations for implementing the District of Columbia's parole laws. *See* D.C. Code § 24-131(a). "Between 1998 and 2000, the USPC drafted new parole regulations and guidelines ('2000 Guidelines') that it applied to any offender who received an initial parole hearing after August 5, 1998." *Sellmon*, 551 F. Supp. 2d at 71.

### 2. 2000 Guidelines

"Similar to the 1987 Regulations, the 2000 Guidelines use a point score system to determine whether a candidate is presumptively suitable for parole," *id.* at 73, beginning with a SFS to "assist the [USPC] in assessing the probability that [an offender] will live and remain at liberty without violating the law." 28 C.F.R. § 2.80(c). The Salient Factor Scoring Manual, *see* 28 C.F.R. § 2.20, directs that the USPC consider and score the following: prior adult or juvenile convictions (Item A), prior adult or juvenile commitments of more than 30 days (Item B), age when the current offense was committed (Item C), period of time the candidate has been commitment-free (Item D), the offender's status as a parole or probation violator at the time of the current offense (Item E), and whether the offender was 41 years of age or older at the time of the current offense (Item F). *See* 28 C.F.R. § 2.20. Together with the SFS, the USPC considers and scores the type of risk the offender poses, that is, his SFS (Category I), his history of violence (Category II) and the death of or harm to a victim resulting from the offender's behavior (Category III), in order to calculate the offender's base point score. *Id.* § 2.80(f). The base point score is converted to a base guideline range, that is, a number of months "added to the [offender's] minimum sentence imposed by the court," *Sellmon*,

551 F. Supp. 2d at 73 (citing 28 C.F.R. § 2.80(h)), to "[d]etermine the total number of months until parole eligibility."  28 C.F.R. § 2.80(i).

        After the USPC has added the base guideline range to the parole eligibility period, it makes adjustments for disciplinary infractions and program achievement.  *See id.* § 2.80(j), (k).  If the offender has committed "any significant disciplinary infractions since the beginning of confinement on the current offense in the case of an initial hearing," the USPC determines the applicable guideline range under 28 C.F.R. § 2.36 for those infractions.  *Id.* § 2.80(j).  If the USPC finds that the offender has accomplished "superior program achievement," it awards the offender "one-third of the number of months during which the prisoner demonstrated superior program achievement."  *Id.* § 2.80(k).  Whether an offender has demonstrated "superior program achievement" is the subjective determination of the hearing examiner and USPC Commissioners.  *Sellmon*, 551 F. Supp. 2d at 88.  After these adjustments, the USPC determines the total guideline range.  28 C.F.R. § 2.809(l).

        To determine the minimum guideline range, the USPC adds (1) the minimum of the base point guideline range, (2) the number of months required by the parole eligibility date, and (3) the minimum guideline range for disciplinary infractions, and from this number it subtracts the award of superior program achievement.  *Id.* § 2.80(l)(1).  To determine the maximum total guideline range, the USPC adds (1) the number of months required by the parole eligibility date and (2) the maximum guideline range for disciplinary infractions, and from this total it subtracts the award for superior program achievement, if any.  *Id.* § 2.80(l)(2).

        In "unusual circumstances," the USPC "may . . . grant or deny parole to a[n] [offender] notwithstanding the guidelines."  *Id.* § 2.80(n)(1).  Factors suggesting a decision above

the guidelines include unusually persistent failure under parole supervision, an unusually persistent history of criminally related substance abuse, an unusually persistent prior criminal record, extraordinary criminal sophistication in the current offense, unusual cruelty to a victim, or an unusual propensity to inflict violence.  *See id.* § 2.80(n)(2).  An offender may be a better risk than indicated by his SFS if, for example, his prior criminal record results extensively from minor offenses or if he has spent a significant crime-free period of time in the community.  *See id.*

### D.  Plaintiff's Ex Post Facto Claim

Plaintiff brings this action against the USPC Commissioners under 42 U.S.C. § 1983 in an attempt "to vindicate rights protected by the Ex Post Facto Clause of Article 1, Section 9 of the United States Constitution," as well as the Fifth and Fourteenth Amendments.  Compl. ¶ 1.  He alleges that application of the USPC's 2000 Guidelines "have significantly increased the risk that [he] will serve a longer period of incarceration than he would have had [the USPC] applied the [1987 Regulations] that were in effect when he was convicted and sentenced."  *Id.* ¶ 63.  Application of the 2000 Guidelines in effect "[i]ncreas[es] the period the Parole Board considered as satisfying offense accountability," he alleges, and it both  "fail[s] to give Plaintiff credit for program achievements," and "increas[es] Plaintiff's guideline range by considering disciplinary infractions that the Parole Board would have ignored."  *Id.* ¶ 67.  He demands reconsideration of the USPC's decision to deny parole, a new parole hearing and application of the 1987 Regulations and 1991 Policy Guideline.  *Id.* at 18 (Relief Requested).

## II.  ANALYSIS

### A.  Retroactive Application of Parole Guidelines

The United States Constitution prohibits any State from passing any "ex post facto

Law." U.S. CONST. art. 1, § 9, cl.3.   The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (citing *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept," *Garner v. Jones*, 529 U.S. 244, 250 (2000), if, for example, the law as applied to a particular prisoner's sentence "created a significant risk of increasing . . . punishment." *Id.* at 255.

"[T]he critical question in ex post facto challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration." *Fletcher v. Reilly*, 433 F.3d 867, 869-70 (D.C. Cir. 2006).   Plaintiff moves for partial summary judgment on his ex post facto claim. *See generally* Mem. of P. & A. in Supp. of the Mot. of Pl. for Partial Summ. J. on Ex Post Facto Claims ("Pl.'s Mot.").   He argues that, by applying the USPC's 2000 Guidelines instead of the Parole Board's 1987 Regulations and 1991 Policy Guideline, Defendants  have created a significant risk of prolonging Plaintiff's incarceration and, in fact, have increased that incarceration. *Id.* at 1.

## B.  Application of the 2000 Guidelines to Plaintiff's Sentence

A USPC hearing examiner conducted Plaintiff's initial parole hearing on July 23, 2007 at USP Lewisburg. *See* Defs.' Mot., Ex. I (Hearing Summary).   As of July 25, 1997, six months prior to his parole eligibility date, Plaintiff had served 183 months in custody. *Id.* at 1.

The hearing examiner determined that Plaintiff's SFS was 4. *Id.* at 3.   Plaintiff had three prior convictions for assault with a dangerous weapon, attempted distribution of cocaine, and carrying a pistol without a license (Item A = 1); he had two prior commitments of more than 30 days (120 days' work release on attempted distribution of cocaine and 120 days for carrying a pistol

without a license) prior to the date on which he committed the current offense (Item B = 1); he was

22 years of age with two prior commitments at the time of the current offense (Item C = 2); he had

not been commitment-free at least three years prior to the current offense (Item D = 0); he was on

probation at the time he committed the current offense (Item E = 0); and he was under 41 years of

age at the time he committed the current offense (Item F = 0).  *Id.*; *see id.*, Ex. H at 1-2.  The hearing

examiner calculated a base point score of 8.  *Id.*, Ex. H at 2 & Ex. I at 3.  Plaintiff's SFS was 4

(Category I = 2); he committed acts of violence in the current offense and felony violence in one

prior offense (Category II = 3); and the current offense, voluntary manslaughter, resulted in the death

of a victim (Category III = 3).  *Id.*, Ex. H at 2.  Under 28 C.F.R. § 2.80(h), the base guideline range

was 72-96 months.  *Id.*, Ex. H at 2 & Ex. I at 3.

     Plaintiff admitted to five disciplinary infractions, the last of which occurred in

December 2002, while in custody on the current offense, and under 28 C.F.R. § 2.36, the guideline

range for each infraction was zero to two months.  Defs.' Mot., Ex. I at 1-2.  Because Plaintiff had

"completed a number of Vocational Training Programs including the Challenge Program to deal with

his drug behavior," *id.* at 3, the hearing examiner awarded 12 months for superior program

achievement.[2]  *Id.*

---

[2]    The hearing examiner found that:

Since 2002 [Plaintiff] had completed the CODE Program, Chess Video,
Informational Employment Video, Introduction to Business Law, Real Estate,
Mortgage Transactions, Understanding Fitting, Retaining Industrial Housekeeping,
First Aid Adult CPR, Victim Impact, CDL, Health Fitness, African American
Studies, Industrial Housekeeping, Introduction to Business and Accounting
Principles, Health Awareness, Fitness Assessment, Creative Cake Decorating, Cage
Your Rage, Introduction to Spanish, Total Body Fitness, Business Entrepreneurship
and Mentoring, Vocational Electric and Plumbing Training and the Challenge

(continued...)

Plaintiff would reach his parole eligibility date upon service of 189 months' incarceration. *See id.*, Ex. H at 3. Added to this 189 months was the base point score guideline range of 72-98 months and the disciplinary guideline range of 0-10 months. *Id.*, Ex. I at 3. Subtracted from these amounts were 12 months for superior program achievement. *Id.* Although the Prehearing Assessment indicated that Plaintiff "has demonstrated Superior Program Achievement for 58 months," *id.*, Ex. H at 3, the hearing examiner awarded 12 months only in part because Plaintiff would not complete a vocational training program until fall of 2008, some months after the initial hearing. *Id.*, Ex. I at 3. He felt that "some of [Plaintiff's] behavior should be given the Superior Program Achievement due to the fact that [Plaintiff] has remained incident report free for a period of time since he's been in the Federal System." *Id.*

The resulting total guideline range, then, was 249-283 months. *Id.* Although Plaintiff became eligible for parole after serving 189 months, application of the 2000 Guidelines required that he serve at least another 60 months to reach the minimum of the total guideline range, 249 months.

The hearing examiner remarked that Plaintiff at the parole hearing "admitted to taking somebody's life [but] was not forthcoming at first with details regarding the offense." *Id.* at 1. It appeared to the examiner that Plaintiff "did not have an actual reason for killing the other individual other than the other individual was looking for him." *Id.* The victim was "just another individual in the neighborhood who heard a disrespectful term come from [Plaintiff] in a crap game." *Id.* The

---

[2](...continued)
Program.

Defs.' Mot., Ex. I at 2. Plaintiff since has earned Certificates of Competency in vocational programs for residential heating and air conditioning and for commercial refrigeration. Pl.'s Reply to Defs.' Mem. of Law in Reply to Pl.'s Original Opp'n to Defs.' Summ. J. Request and Pl.'s Renewed Request for Summ. J. ("Pl.'s Reply"), App.

examiner, therefore, "believe[d] that a decision at the top of the guidelines for the offense is appropriate because [Plaintiff] explained the offense as if he was carrying a pistol to protect himself for when [the victim] [came] after him instead of using the legal terms in order to protect himself thus, not calling the police." *Id.* at 3. Ultimately, the USPC denied parole and continued the matter to a reconsideration hearing in July 2012. *Id.*, Ex. J (August 10, 2007 Notice of Action) at 1.

C. *Application of the 1987 Regulations and the 1991 Policy Guideline to Plaintiff's Sentence*

The parties agree that, under the 1987 Regulations, Plaintiff's SFS is 4. *See* Defs.' Mot. at 11; Pl.'s Reply at 8. The SFS includes one point for Plaintiff's three prior convictions (Item A = 1), one point for his prior commitments of more than 30 days (Item B = 1), one point for his age (22 years) at the time of the current offense (Item C = 1), no points because of his prior commitment of more than 30 days within three years prior to the current offense (Item D = 0), no points because Plaintiff was on probation at the time of the current offense (Item E = 0), and one point because Plaintiff has no history of heroin or opiate dependence (Item F = 1). *See* 28 D.C.M.R. § 204, app. 2-1. With an SFS of 4, Plaintiff falls in the "moderate risk" category, and, therefore, his Base Point Score is 2.

Because the current offense involved a felony in which the Plaintiff caused death, voluntary manslaughter, under the 1987 Regulations, one point is added to the Base Point Score.

The Court concurs with Plaintiff that he may rely on the 1991 Policy Guidelines which took effect before March 19, 1992, the date on which he committed voluntary manslaughter and related offenses.[3] Because Plaintiff's institutional disciplinary infractions occurred more than

---

[3]        Plaintiffs "may only invoke *ex post facto* protection based on the parole regime that was in place at the time they committed their offenses." *Sellmon*, 551 F. Supp. 2d at 85. The record
(continued...)

three years before his initial parole hearing and did not involve murder, manslaughter, or armed robbery, the infractions would not be considered, adding no points to his Base Point Score.  It is reasonable to conclude that Plaintiff's program achievement would have warranted a decrease of one point.  Plaintiff's total point score under the 1987 Regulations and 1991 Policy Guideline is 2, and absent an upward departure, parole would have been "-granted at initial hearing with [the] highest level of supervision required."  28 D.C.M.R. § 204.19(c).

## III. CONCLUSION

In *Sellmon*, the court found four significant facial differences between the parole regimes in effect under the former Board and the USPC.  *See Sellmon*, 551 F. Supp. 2d at 87-88. Of particular importance in Plaintiff's case are the treatment of a candidate who committed a crime of violence resulting in death and the consideration of negative institutional behavior.  *See id.*  Under the 2000 Guidelines, a candidate "with a base point score of greater than 3 months will, absent superior program achievement, have additional months added to his . . . parole eligibility period." *Sellmon*, 551 F. Supp. 2d at 73 (citing 28 C.F.R. § 2.80(h), (i)).  A candidate who, like Plaintiff, "committed a crime of violence resulting in the death of the victim can *never* be found suitable for parole at the time they first become eligible for parole after serving [his] minimum sentence."  *Id.* at 87 (emphasis in original).  Furthermore, the 2000 Guidelines are written such that "disciplinary

---

[3](...continued)
shows that Plaintiff attempted to distribute cocaine on May 23, 1990 and committed voluntary manslaughter and related offenses on March 19, 1992.  All the offenses took place after the 1987 Regulations were in place, but only the drug offense occurred before the 1991 Policy Guideline took effect.  Defendants argue that Plaintiff cannot avail himself of the 1991 Policy Guideline with respect to the drug offense.  *See* Defs.' Mot. at 10 n.7, 12.  Plaintiff notes that the USPC calculated a Base Point Score after having "added 6 points . . . based on the current conviction of Manslaughter which occurred in 1992, and therefore Plaintiff can claim Ex Post Facto protection based on the 1991 Policy Guideline."  Pl.'s Reply at 3.

infractions translate *directly* into additional months of incarceration," and "*all* disciplinary infractions" are considered. *Id.* (emphasis in original).

Plaintiff has served his minimum aggregate sentence, 189 months' incarceration. Under the 1987 Regulations and the 1991 Policy Guidelines, completion of his minimum sentence deems him eligible for parole release at initial hearing, and a total point score of 2 or less deems him suitable for parole release. In contrast, under the 2000 Guidelines he is not eligible for parole release at his initial hearing for two principal reasons. First, the assessment of points to reflect the commission of a crime of violence and an offense resulting in the death of a victim added 72-96 months to the minimum aggregate sentence. Second, Plaintiff's disciplinary infractions added 0-10 more months. Notwithstanding an award of 12 months for superior program achievement, Plaintiff must serve at least 249 months before he is presumed suitable for parole, which is 60 months longer than he likely would have faced if the 1987 Regulations and 1991 Policy Guideline were applied.

This Court concludes that the application of the 2000 Guidelines to Plaintiff's particular case creates a significant risk of prolonging Plaintiff's incarceration. Accordingly, the Court grants the Plaintiff's motion for partial summary judgment on his ex post facto claim. An Order is issued separately.

Date: March 31, 2009             _____/s/_____
                                      ROSEMARY M. COLLYER
                                      United States District Judge